United States District Court
Southern District of Texas
**ENTERED**
February 18, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Eric Dynes<br>*Plaintiff,* | §<br>§<br>§ | |
| v. | § | Civil Action H-22-3261 |
| The Goodyear Tire and<br>Rubber Company<br>*Defendant.* | §<br>§<br>§<br>§ | |

## MEMORANDUM AND RECOMMENDATION

This employment discrimination case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 6. Pending before the court are Defendant The Goodyear Tire and Rubber Company's (Goodyear) Motion for Summary Judgment, ECF No. 35; Plaintiff Dynes's Motion to Strike, ECF No. 40; and Goodyear's Motion to Strike, ECF No. 45. The court recommends that Goodyear's summary judgment motion, ECF No. 35, be **GRANTED in part and DENIED in part**. Both motions to strike, ECF Nos. 40 and 45 are **DENIED**.

### *1. Background*

Eric Dynes worked for Goodyear at its Houston Chemical Plant (Plant) from November 2016 until his termination on April 14, 2023. Dynes Decl., ECF No. 41-5 ¶ 1; Dynes Termination Letter, ECF No. 41-24. Dynes is a Black man who now brings claims against Goodyear for discrimination, retaliation, and a hostile work environment. Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., ECF No. 41 at 1.

The Plant manufactures synthetic rubber and operates 24/7. Jamison Decl., ECF No. 35-1 ¶ 8. The Plant is physically and organizationally divided into two sections—Polymerization, which

involves chemical operations, and Finishing, which involves manufacturing. *Id.* at 4. Dynes had positions in the Finishing Division from 2016 until 2021, when he transferred to the Polymerization Division. Dynes Dep., ECF No. 41-2 at 53:15–54:15, 55:3–56:4.

On July 14, 2020, while at work, Dynes received a call informing him that he tested positive for COVID-19. Dynes Dep., ECF No. 41-2 at 66:1–18. Dynes informed his leadman, Bruce Manthey, of the diagnosis and left work. *Id.*; Jamison Decl., ECF No. 35-1 ¶ 6. His return date was set for August 18, 2020. Jamison Decl., ECF No. 35-1 ¶ 6.

After Dynes learned of his diagnosis and left the Plant to quarantine, Andy Leske, the individual in charge of the Finishing Division, shared Dynes's diagnosis with others at the Plant. Dynes Dep., ECF No. 41-2 at 56:1–4; Invest. Rpt. Aug. 2020, ECF No. 41-6 at 12; *see also* Goodyear Org. Chart, ECF No. 41-3. Employees at the Plant stated that Leske was very angry and that Leske told "everyone" repeatedly that Dynes intentionally came to work with COVID-19. Dynes Audio Recordings Ex. E-1 and E-2, ECF No. 41-5.

About a week later, Dynes began receiving anonymous phone calls, and if Dynes answered, the caller would remain silent. Invest. Rpt. Aug. 2020, ECF No. 41-6 at 2. The calls escalated to text messages, then to threatening text messages. *Id.*

On August 18, 2020, Dynes reported Leske's behavior to Goodyear and stated that he experienced retaliation and death threats because of Leske's false statements. Invest. Rpt. Aug. 2020, ECF No. 41-6 at 2. Dynes stated that he was concerned for his safety if he were to return to the Plant. *Id.* On August 19, 2020, Dynes reported the same to Carol Jamison, Goodyear's Houston Human Resources Manager. Jamison's Doc. of Complaint, ECF No. 41-9.

On multiple occasions in early September 2020, Dynes received the texts below.




Invest. Rpt. Aug. 2020, ECF No. 41-6 at 4.[1] Goodyear's Global Security department began an internal investigation and initially conducted a phone interview with Dynes on September 11, 2020. *Id.* at 1–2. Dynes remained on paid leave during the investigation. Jamison Decl., ECF No. 35-1 ¶ 12.

Dynes returned to work on September 25, 2020, with an accommodation to park closer to the Plant's main entrance. Invest. Rpt. Aug. 2020, ECF No. 41-6 at 3. On September 26, 2020, while he was at work, Dynes received the texts below.

---

[1] The court has omitted racial epithets containing the "n-word" here and throughout this Memorandum and Recommendation. "[T]he term 'n*****' is '[t]he most noxious racial epithet in the contemporary American lexicon.'" *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 401 (5th Cir. 2021).




*Id.* at 3–4. A few days later, Dynes texted Clokey, the Goodyear investigator, and told him he felt unsafe at the Plant. *Id.* Dynes also texted Jamison and said "The looks I get as well as the way I'm treated is different than before. Having to work around [Leske] knowing he's either doing this or created this is a hostile work environment." Jamison Doc. Sept. 28, 2020, ECF No. 41-12. Goodyear sent investigators to Houston and placed Dynes on paid leave for the duration of the investigation. *Id.*

As part of the investigation, investigators interviewed employees at the Plant. *See* Invest. Rpt. Aug. 2020, ECF No. 41-6. Clokey states in his report that the texts indicate that a group of people are involved and that the texts are from untraceable phone numbers that were "likely randomly generated from a phone spoofing application in [an] attempt to avoid detection." *Id.* at 2–3. The investigation substantiated three findings: (1) Leske disclosed Dynes's diagnosis; (2) Dynes had received retaliation and death threats; and (3) Jason Barrett, a supervisor that Dynes reported to and worked with, discriminates against Black employees, and

Barrett repeatedly lied during the investigation and exhibited signs of withholding information. *Id.* at 12. The report states that investigators were unable to positively identify any associates involved with Dynes's harassment. *Id.* The report recommends "HR and Legal to consider disciplinary action for Jason Barrett (salary associate), based on the preliminary findings from the investigation." *Id.*

Goodyear did not take disciplinary action against Barrett. Goodyear's Disc. Resp., ECF No. 41-11 at 8–9. On November 2, 2020, Dynes returned to work where he reported to and worked with Leske and Barrett. Jamison Decl., ECF No. 35-1 ¶ 12; Dynes Dep., ECF No. 41-2 at 54:17–56:6.

Dynes stated in his deposition that, after his return to work, he was denied opportunities for overtime that he was entitled to. Dynes Dep., ECF No. 41-2 at 121:2–19. Goodyear states that Dynes was not entitled to overtime pursuant to the terms of Dynes's Labor Agreement. Def.'s Mot. Summ. J. ECF No. 35 at 17; *see also* Grievance Letter, ECF No. 41-15 (including an excerpt of the labor agreement). Dynes received a text on December 11, 2020, below.

> +18324640730
> 7:16 AM, Dec 11
>
> Dumb n[redacted] the more you complain, we will continue to fuck up your life. It was no accedent your OT money was taken. We are HR like we said. And as I see n[redacted] the union won't help you either. We are carful picking our spot to fuck you up. N[redacted] nothing will happen to our people we have in place, you n[redacted] life means nothing. Keep checking yo payroll ape

Text re: Overtime, ECF No. 41-13. After Dynes filed a grievance with the union, Goodyear stated that the grievance arose under "very unique and unprecedented" circumstances, and thus,

Goodyear allowed Dynes to make up 72 hours of overtime. Grievance Letter, ECF No. 41-15.

About six months later, in June 2021, Dynes was awarded a new position within Goodyear as a Polymerization Operator. Dynes Dep., ECF No. 41-2 at 55:3–18. Around that time, after Dynes transferred to his new position in the Polymerization Division, Leske admitted that he had someone remove the lock from Dynes's locker in the Finishing Division so that someone else could use Dynes's old locker. Union Memo re: Locker, ECF No. 41-16. Dynes stated that he had personal items still in his old locker—a ring, credit card, his family's social security numbers, birth certificates, his marriage license, and federal income tax forms—most of which he used to verify his family's medical insurance through Goodyear. *Id.* Dynes stated that the items were removed and never returned to him. *Id.* The Chief Union Steward reminded Leske of the normal procedure for opening lockers, which included giving notice to the prior locker owner and saving the items inside to return to the owner. *Id.* Leske "had no explanation for why he handled [Dynes's] lockers differently." *Id.*

On August 27, 2021, Dynes filed a charge with the Equal Employment Opportunity Commission (EEOC). EEOC Charge, ECF No. 41-21.

On December 10, 2021, Dynes did not receive his normal paycheck. Invest. Rpt. Mar. 2022, ECF No. 41-17 at 13. Dynes informed the Union Steward, who informed HR. *Id.* On December 24, 2021, Dynes again received threatening text messages.




Invest. Rpt. Mar. 2022, ECF No. 41-17 at 13. Dynes stated in his deposition that, "[w]hen someone text[s] you, Check your paycheck n[*****] and then you go and look and your pay is not there, then I believe that's the reason for something to be racially motiv[ated]." Dynes Dep., ECF No. 41-2 at 129:19–25. Goodyear re-opened its investigation into Dynes's claims and found that his missed paycheck was due to a "glitch" in the payroll processing system that marked Dynes as "inactive" incorrectly. Invest. Rpt. Mar. 2022, ECF No. 41-17 at 13.

About a year later, around December 9, 2023, Dynes received a text from a co-worker, Chris Valsin asking which shift Dynes was planning to sign up for in the coming year. Supp. Invest Rpt., ECF No. 41-22 at 3.

On March 25, 2023, during shift change, Valsin and Dynes engaged in a physical altercation that was recorded on a surveillance camera at Goodyear. Mar. 2023 Rpt., ECF No. 41-23 at 10. The video of the fight is not before the court, but according to the investigation after the fight, Valsin and Dynes had a poor

relationship. *Id.* at 4, 7. Between shifts, employees used bikes to travel from their work station to changing area. *Id.* at 5–9. Employees reported that "Valsin was intentionally hiding the bike to inconvenience Dynes," *id.* at 5, and that it was "only a matter of time" before this altercation happened saying "Valsin has been giving Dynes hell." *Id.* at 6.

After Dynes approached Valsin to talk, an argument ensued. Mar. 2023 Rpt., ECF No. 41-23 at 2. Dynes stated that Valsin slapped Dynes, which prompted Dynes to punch Valsin. *Id.* at 8. All other witnesses "indicated that Dynes threw the first and only punch during the altercation." *Id.* at 10. The day after the fight, a Goodyear employee sent an email stating that it "[l]ooks like both May have thrown punches. Need [to] make sure both are suspended until investigation is complete and talk to Linda and decision is made about both of them." Email re: Altercation, ECF No. 41-25. The investigation found that, "[b]ased on the video evidence and statements from witnesses, it can be confirmed that both Dynes and Valsin actively engaged in an altercation in the workplace." Mar. 2023 Rpt., ECF No. 41-23 at 10.

Goodyear's Zero Tolerance Policy states that Goodyear has *zero tolerance* for discrimination, harassment, retaliation, and workplace violence. Goodyear Zero Tolerance Booklet, ECF No. 41-1 at 1. The Policy states that:

> Zero tolerance is not a system of penalties and does not mean that every violation of the policies contained herein will necessarily result in termination. However, in some cases, in the sole discretion of the Company and based upon the severity of the conduct, a single violation of a policy contained in this booklet may result in immediate discharge and loss of benefits, as permitted by applicable law.

*Id.*

Goodyear terminated Dynes on April 14, 2023. Dynes Termination Letter, ECF No. 41-24. Goodyear stated that its investigation "substantiated that [Dynes] violated [Goodyear's Zero Tolerance Policy] by instigating the altercation and striking another employee." *Id.*

Goodyear found that Valsin did not appear to instigate the confrontation, yet he failed to de-escalate the situation, which violated the Zero Tolerance Policy. Valsin Warning Letter, ECF No. 41-26. Valsin was not terminated, but received written discipline and was suspended for two shifts without pay. *Id.*

Based on these events, Dynes brought claims related to disability and race discrimination, retaliation, and hostile work environment. Pl.'s First Am. Compl., ECF No. 26.

***2. Motions to Strike***

On summary judgment, a party may object to exhibits that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) ("At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'"). Declarations are competent summary judgment evidence if they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Dynes filed a Motion to Strike Goodyear's Declarations of Matthew Clokey (ECF No. 35-6) and Carol Jamison (ECF No. 35-1), which Goodyear filed in support of its summary judgment motion. Pl.'s Mot. Strike, ECF No. 40. Dynes argues that both declarations must be stricken because Goodyear did not disclose either declaration prior to filing its motion for summary judgment in violation of Federal Rule of Civil Procedure 26. *Id.* at 1–2.

Goodyear responds that both declarations were prepared to support its motion for summary judgment, and such declarations do not need to be disclosed when, as here, the declarants have already been identified as potential witnesses. Def.'s Resp. to Pl.'s Mot. Strike, ECF No. 43 at 2–4. Dynes does not dispute that Goodyear disclosed Clokey and Jamison as individuals likely to have discoverable information. Dynes also had the opportunity to depose both Clokey and Jamison. *See* Jamison Dep., ECF No. 41-4; Clokey Dep., ECF No. 41-8.

Several courts have held that Federal Rule of Civil Procedure 26 does not require a party who has disclosed a potential witness to also disclose a declaration signed by that witness for use in a motion for summary judgment. *See* Fed. R. Civ. P. 26(a)(1)(A); *Intel Corp. v. VIA Techs., Inc.*, 204 F.R.D. 450, 451–52 (N.D. Cal. 2001) ("it would be unreasonable and burdensome . . . to require all sides to augment any privilege logs or disclosure lists each and every time they obtain a declaration for potential use on summary judgment"); *Joseph v. Las Vegas Metro. Police Dep't*, No. 2:09-CV-00966-HDM, 2011 WL 2295071, at *1 (D. Nev. June 10, 2011) (stating that the Rules do not require disclosure of declarations under these circumstances); *League of Women Voters of Arkansas v. Thurston*, No. 5:20-CV-05174, 2023 WL 6446015, at *8 (W.D. Ark. Sept. 29, 2023). Because Goodyear disclosed Clokey and Jamison as individuals who might have discoverable information and because courts have held that the Federal Rules of Civil Procedure do not require disclosure of declarations in this situation, Dynes's objection on that basis is overruled.

Dynes also argues that Jamison's statement in her declaration that Valsin is "a Black male," Jamison Decl., ECF No. 35-1 ¶ 16, should be struck because it is unsupported, conclusory, and not based on Jamison's personal knowledge. Pl.'s Mot. Strike, ECF No. 40 at 3. Goodyear argues that Jamison's

statement is not conclusory and is based on her personal knowledge consistent with her position at Goodyear. Def.'s Resp. to Pl.'s Mot. Strike, ECF No. 43 at 4–5. Jamison has been the HR Services Manager for Goodyear in Houston for seventeen years. Jamison Dep., ECF No. 41-4 at 10:15–11:10.

The Fifth Circuit has held that a declarant's personal knowledge may be reasonably inferred based on matters within that person's employment. *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005). Here, it may be reasonably inferred from Jamison's position in HR that she is familiar with Valsin's race. Dynes's motion to strike, ECF No. 40 is **DENIED**.

Goodyear filed a motion to strike two electronic audio recordings attached to Dynes's Declaration (Exhibits E-1 and E-2, ECF No. 41-5) as improperly authenticated and inadmissible hearsay. Def.'s Mot. Strike, ECF No. 45 at 1–3. In response, Dynes argues that Goodyear's motion should be denied because the evidence is proper summary judgment evidence and can be provided in an admissible form at trial.[2] Pl.'s Resp. Opp'n Def.'s Mot. Strike, ECF No. 46 at 2–4.

Goodyear's objections are without merit. Precedent does not support its authentication argument. "At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017); Fed. R. Civ. P. 56(c). Dynes must show that his evidence is *capable* of being "presented in a form that would be admissible in evidence." *Id.* (quoting *LSR Consulting, LLC*, 835 F.3d at 534); *see also Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 521–22 (5th Cir. 2021). In any event, in his declaration, Dynes

---

[2] Dynes also argues that Goodyear's motion should be denied because it was filed late. Pl.'s Resp. Opp'n Def.'s Mot. Strike, ECF No. 46 at 2. The court denies Goodyear's motion on the merits and need not reach Dynes's timeliness argument.

identifies the speakers in the recordings, states when the conversations occurred, states that he recorded the conversations at issue, and states that the recordings are authentic and correct. Dynes Decl., ECF No. 41-5 ¶¶ 8–19.

Goodyear's hearsay argument also fails. The recorded phone calls are used to prove that a disclosure of Dynes's diagnosis occurred, not the content of the disclosure. That said, the fact that the disclosure occurred is not disputed. Dynes uses the recordings only to characterize Leske's disclosure, and the court does the same. Consideration of the recordings does not change the outcome of any claim. Goodyear's motion to strike, ECF No. 45, is thus **DENIED**.

### *3. Summary Judgment*

#### *A. Legal Standard*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue

for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim."). Although the court needs to consider only the cited evidence, it is allowed to consider other materials in the summary judgment record. Fed. R. Civ. P. 56(c)(3).

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "[T]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### *B. Analysis*

In his Amended Complaint, Dynes brought claims related to disability and race discrimination, retaliation, and hostile work environment. Pl.'s First Am. Compl., ECF No. 26. Goodyear moved for summary judgment on all claims against it, and Dynes explicitly waived all disability-related claims in his response. Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., ECF No. 41 at 1 n.1. The remaining claims before the court are Dynes's race-based discrimination, retaliation, and hostile work environment claims under Chapter 21 of the Texas Labor Code (known as the Texas

Commission on Human Rights Act, "TCHRA") and 42 U.S.C. § 1981.

The law governing claims under both statutes (and under Title VII of the Civil Rights Act of 1964) is "functionally identical." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999). Accordingly, the court relies on precedent from cases interpreting all three statutes in its analysis.

Direct evidence of discriminatory or retaliatory intent is rare. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). When based on circumstantial evidence, claims for discrimination and retaliation are analyzed under the burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Saketkoo v. Adm'rs. of Tulane Educ. Fund*, 31 F.4th 990, 997, 1000 (5th Cir. 2022) (applying the burden-shifting approach to retaliation and discrimination claims). This approach is meant to help the court navigate motions for summary judgment and provides the order and allocation of proof to ensure that Title VII's purposes are carried out when direct evidence of discrimination is not available, which is usually the case. *McDonnell Douglas Corp.*, 411 U.S. at 800–01.

The burden-shifting approach places the initial burden on the plaintiff to establish a prima facie case of discrimination or retaliation. *See Saketkoo*, 31 F.4th at 999. If the plaintiff meets the initial burden, the defendant must respond by providing a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant meets its burden, the employee must produce evidence showing that the proffered reason is pretextual. *Id.*

Dynes first argues that the court should deny Goodyear's motion in its entirety because, even if Goodyear meets its summary judgment burden, trial is a better path forward. Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., ECF No. 41 at 28. The court does not agree. "A district judge has the discretion to deny a Rule 56 motion even

if the movant otherwise successfully carries its burden of proof if the judge has doubt as to the wisdom of terminating the case before a full trial." *Veillon v. Expl. Services, Inc.*, 876 F.2d 1197, 1200 (5th Cir. 1989). Goodyear timely filed its motion and raised issues commonly resolved at the summary judgment stage. Dynes has not raised any concerns about the fairness or efficiency of the proceedings such that the court "has doubt as to the wisdom of terminating the case before a full trial." *Id.* The court conducts a full summary judgment analysis and recommends granting Goodyear's motion only in part. Dynes's request is denied.

***i. Hostile Work Environment Claim***

To establish the prima facie case for a hostile work environment, the plaintiff must show that he (1) is a member of a protected group; (2) suffered unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

Goodyear does not dispute that Dynes is a member of a protected group as a Black man, but Goodyear argues that Dynes cannot establish the second, fourth, or fifth elements of his claim. Def.'s Mot. Summ. J., ECF No. 35 at 23.

Goodyear argues that Dynes cannot establish that anyone at Goodyear subjected him to unwelcome harassment. *Id.* at 23. The parties focus their arguments on the anonymous texts that Dynes received. Thus, the court's analysis focuses on this conduct as well. The evidence shows that the authors of the texts identify themselves as HR, know that Dynes's paycheck from Goodyear was incorrect, and state that the authors spit in Dynes's water at Goodyear. *See, e.g.*, Invest. Rpt. Aug. 2020, ECF No. 41-6 at 3–4;

Invest. Rpt. Mar. 2022, ECF No. 41-17 at 13. The texts show intimate knowledge of the events that were transpiring within the Plant. A reasonable jury could find that the texts originated from someone at Goodyear.

The texts almost always included racial slurs including the n-word and "ape." *See, e.g.,* Invest. Rpt. Mar. 2022, ECF No. 41-17 at 4, 13. Goodyear does not explicitly argue that the harassment was not based on Dynes's race. The Fifth Circuit has held that "racial slurs are certainly based on race[,]" *Melvin v. Barr Roofing Co.*, 806 F. App'x 301, 309 (5th Cir. 2020), and that "[t]he magnitude of the offensiveness of being referred to as . . . 'n*****' by a fellow employee cannot be understated," *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 401 (5th Cir. 2021). Thus, Dynes presents sufficient evidence to create a fact question about whether he experienced unwelcome harassment from someone at Goodyear based on his race.

Goodyear next argues that Dynes cannot show that the messages impacted a term, condition, or privilege of his employment. Def.'s Mot. Summ. J., ECF No. 35 at 24–25. For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive" and create an abusive working environment. *Gibson v. Verizon Services Org., Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012). Courts consider the totality of the circumstances in this analysis, including the conduct's frequency, severity, whether it is physically threatening, and whether it interferes with the employee's work performance. *Flowers v. S. Reg'l Physician Services Inc.*, 247 F.3d 229, 236 (5th Cir. 2001). This is an objective standard, and it requires that a reasonable person would find the environment hostile or abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not enough to alter the terms and conditions of

employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, (1998) (citation and internal quotation marks omitted). The Fifth Circuit has also stated that "the term 'n*****' is '[t]he most noxious racial epithet in the contemporary American lexicon[,]'" and the magnitude of its offensiveness cannot be understated. *Johnson*, 7 F.4th at 401.

Goodyear argues that the messages Dynes complains of are not severe or pervasive enough to support a hostile work environment claim because they did not occur frequently, were isolated, and, because there is no evidence that they came from anyone at Goodyear, they did not impact his work environment. Def.'s Mot. Summ. J., ECF No. 35 at 24–25.

This is not a single incident of harassment. Nor are these isolated, offhand comments. Dynes provides evidence that he received anonymous, threatening texts using deeply degrading racial epithets on at least five separate occasions from September 2020 through December 2021. Invest. Rpt. Aug. 2020, ECF No. 41-6 at 4; Text re: Overtime, ECF No. 41-13; Invest. Rpt. Mar. 2022, ECF No. 41-17 at 3. Four of those occurred in the four-month span from September through December 2020. Whoever sent the messages used a program to ensure the phone numbers were untraceable, and the messages threaten Dynes's livelihood and family. *See* Invest. Rpt. Mar. 2022, ECF No. 41-17 at 3–4, 13. Dynes took leave from work because of the messages and received additional security because of them. Jamison Decl., ECF No. 35-1 ¶¶ 11–12. Dynes felt unsafe at work because of the messages. Invest. Rpt. Mar. 2022, ECF No. 41-17 at 3. The messages occurred intermittently for several months—they were not an isolated incident, and there is evidence that they affected his work conditions.

The summary judgment record contains sufficient evidence for a jury to conclude that the harassment was not isolated, and

that Dynes endured "an objectively hostile or abusive work environment." *See Johnson*, 7 F.4th at 403.

If an employer knew of harassment and took prompt remedial action that was reasonably calculated to halt the harassment, it can avoid liability for a hostile work environment.[3] *Williams-Boldware v. Denton Cnty., Tex.*, 741 F.3d 635, 640 (5th Cir. 2014). "Some indicators, albeit not the only ones, that an employer has taken sufficient remedial measures include the employer taking the allegations of harassment seriously, conducting 'prompt and thorough investigations,' and immediately implementing 'remedial and disciplinary measures' as the result of the investigation." *Id.* (quoting *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 795 (5th Cir. 1994)). The Fifth Circuit has also held that an employer may take prompt remedial action as a matter of law even if it was unable to identify the offending party. *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 400 (5th Cir. 1996). But whether an employer took prompt remedial action is a fact-specific inquiry, and not every response will be sufficient. *Williams-Boldware,* 741 F.3d at 503.

Goodyear argues that it took sufficient remedial action by promptly and thoroughly investigating Dynes's claims, providing Dynes with increased security measures during the investigation, and reporting the texts to law enforcement. Def.'s Mot. Summ. J., ECF No. 35 at 26. Goodyear was unable to positively identify any associates involved in the text messages. Invest. Rpt. Aug. 2020, ECF No. 41-6 at 12.

---

[3] Dynes argues in the alternative that a supervisor made the harassing statements, so he need not provide evidence of this element. Because a reasonable jury could find that Goodyear did not take prompt remedial action that was reasonably calculated to halt the harassment, the court need not address this alternative argument.

But Goodyear's own investigation report found that Barrett, Dynes's shift supervisor, treats Black associates differently than other associates and that he repeatedly lied and exhibited signs of withholding information during the investigation. Invest. Rpt. Aug. 2020, ECF No. 41-6 at 12. Goodyear also learned in its investigation that another Black employee changed shifts because of how he was treated by Barrett, but that employee did not report any concerns to Goodyear for fear of retaliation. *Id.* at 6–7. That employee opined that a supervisor, namely Barrett or one other supervisor, hypothetically could have been the one to threaten Dynes. *Id.* The report suggested considering disciplinary action for Barrett, *id.*, but Barrett did not receive any discipline. Goodyear's Disc. Resp., ECF No. 41-11 at 8–9. Instead, Dynes was required to return to work where he reported to Barrett. Dynes Dep., ECF No. 41-2 at 54:17–56:6. At the time of briefing, Barrett was still employed by Goodyear as a Small Business Team Leader in Finishing. Jamison Dep., ECF No. 41-4 at 60:4–24.

Also, after the initial investigation concluded, Dynes again received harassing texts on two occasions. Invest. Rpt. Mar. 2022, ECF No. 41-17 at 13; Text re: Overtime, ECF No. 41-13.

Based on the facts as a whole, and because Goodyear did not take all the remedial action suggested by the investigation, a reasonable jury could find that Goodyear did not take prompt remedial action that was reasonably calculated to halt the harassment. Because there is a dispute of material fact as to the elements of Dynes's claim, Goodyear's motion should be denied on Dynes's hostile work environment claim.

***ii. Discrimination***

A plaintiff may make out a prima-facie case of discrimination using either direct or circumstantial evidence. *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015), *as revised* (Feb. 3, 2015). In a recent

discrimination case, the Fifth Circuit reversed the district court and found that the court "erred by classifying [plaintiff's] evidence as entirely indirect[.]" *Hager v. Brinker Tex., Inc.*, 102 F.4th 692, 698 (5th Cir. 2024). The court has reviewed the briefing before the District Court in *Hager*, and it appears that the issue of direct evidence was not meaningfully before the court on motion for summary judgment. In that case, an employee of the defendant company told the plaintiff "I apologize for discriminating against you." *Id.* The court reads this case as directing district courts to assess whether a plaintiff's evidence may be direct evidence of discrimination even when the parties do not. The parties did not argue that Dynes has direct evidence of discrimination, but in light of *Hager*, and because the messages contain explicitly racist statements, the court addresses it here.

***a. Direct Evidence***

"Direct evidence proves intentional discrimination without inference or presumption when believed by the trier of fact." *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 272 (5th Cir. 2006). Under Fifth Circuit law, direct evidence of discrimination must include indicia of specificity and causation. *Id.* at 273. "[D]irect evidence includes any statement or written document showing a discriminatory motive on its face." *Herster*, 887 F.3d at 185 (quoting *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994), *as amended on denial of reh'g* (Nov. 10, 1994)). A statement or document that shows "on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action [is] direct evidence of discrimination." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005).

To determine whether comments in the workplace constitute direct evidence, the Fifth Circuit considers four factors: whether the comments are (1) related to the plaintiff's protected

characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision. *Etienne*, 778 F.3d at 476. If the plaintiff presents direct evidence of discrimination, "the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." *Id.* at 475.

The issue here relates to the third factor. The texts were anonymous and contain many grammar and spelling errors. It is not clear that they were sent by a person with any authority. As a result, an inference is required before the factfinder could attribute the texts to Goodyear. Under Fifth Circuit law, the evidence cannot be classified as direct evidence of discrimination. Thus, the court continues with the analysis for indirect evidence of discrimination.

***b. Indirect Evidence***

To establish a prima facie case of race discrimination with circumstantial evidence, Dynes must show that he (1) is a member of a protected group, (2) was qualified for his position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside his protected group. *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021). Goodyear argues that Dynes cannot establish the third or fourth elements of his case. Def.'s Mot. Summ. J., ECF No. 35 at 12–13.

Goodyear argues that many of the actions Dynes complains of are not actionable adverse employment actions. *Id.* at 13–14. Dynes states that he was subject to an adverse employment action due to his termination and on six additional bases:

- Leske's disclosure and false statements about Dynes's medical information,

- Receipt of racially discriminatory and threatening texts,
- Improper denial of overtime,
- Incorrect missing pay,
- Incorrect disciplinary action for absenteeism, and
- Missing items from his locker.

Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., ECF No. 41 at 31–32.

To show an adverse employment action, the Fifth Circuit recently held that a discrimination plaintiff need not show an "ultimate employment decision," rather, an adverse action related to the terms, conditions, or privileges of employment is enough. *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 497, 501 (5th Cir. 2023). This is not limited to economic or tangible discrimination and includes damages even for harms that "'did not involve a discharge,' 'loss of pay,' or other 'concrete effect on [his or her] employment status.'" *Id.* at 501 (quoting *Landgraf v. USI Film Prod.*, 511 U.S. 244, 254 (1994)). Any "benefits that comprise the incidents of employment, or that form an aspect of the relationship between the employer and employees" fall within Title VII's ban on discrimination. *Id.* at 501–02. A benefit of employment may not be doled out in a discriminatory manner. *Id.* at 503.

Even if the six additional bases above are adverse employment actions as a matter of law, which the court need not decide, Dynes has not presented evidence establishing his prima facie case for any of them. To meet his prima facie burden, Dynes must provide evidence that he was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside his protected group. *Ernst*, 1 F.4th at 339.

Dynes argues that he was replaced by Eduardo Mozqueda. According to Dynes, Mozqueda is Hispanic and is outside Dynes's protected group. Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., ECF No. 41 at 32–33. But Dynes has not provided evidence of

Mozqueda's race. Dynes provides Mozqueda's driver's license and Goodyear new hire paperwork—neither of which state Mozqueda's race. Mozqueda Empl. Docs., ECF No. 41-28 at 2–3. Because there is no evidence of Mozqueda's race, any fact finder would have to speculate. The evidence thus does not show that Dynes was replaced by someone outside his protected group.

There is also no evidence before the court that any similarly situated employee was treated less favorably in circumstances similar to Dynes's related to the harassing texts he received, disclosure of medical information, denial of overtime, missing pay, disciplinary actions for absenteeism, or missing items from his locker. Dynes does not address this element as to any of these alleged adverse actions, and has not met his prima facie burden for these theories of recovery.

The remaining issue is whether Dynes established a prima facie case of discrimination based on his termination. Goodyear does not dispute the first three elements of Dynes's prima facie case based on Dynes's termination. The question is whether Dynes provides evidence that he was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside his protected group. The court has already found that there is no evidence that Dynes was replaced by someone outside his protected group.

Dynes argues that he was treated less favorably than Valsin, who he argues is a similarly situated employee outside his protected group. Dynes and Valsin had the same position at Goodyear and were engaged in the same altercation. Mar. 2023 Rpt., ECF No. 41-23 at 7–8, 10. After the altercation, Dynes was terminated. Dynes Termination Letter, ECF No. 41-24. Valsin received a written reprimand and two shifts of unpaid suspension. Valsin Warning Letter, ECF No. 41-26.

To show that employees are similarly situated, "[t]he plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator[.]" *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Nearly identical does not mean identical. *Id.* The similarity of employee violations "may turn on the 'comparable seriousness' of the offenses for which discipline was meted out and not necessarily on how a company codes an infraction under its rules and regulations." *Id.* In cases where discrimination is based on disparate discipline among employees, if the difference between the plaintiff's conduct and that of the alleged comparator *accounts for* the difference in treatment received from the employer, the employees are not similarly situated. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009); *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008).

Goodyear and Dynes dispute whether Valsin is within Dynes's protected class. Goodyear provides evidence that Valsin is Black. Jamison Decl., ECF No. 35-1 ¶ 16. Dynes provides a still image from the surveillance video of the altercation between Dynes and Valsin and argues that the image, which includes an orange arrow indicating Valsin, suggests that Valsin "may not be Black." Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., ECF No. 41 at 34.



Dynes Decl., ECF No. 41-5 ¶¶ 22–23. The Fifth Circuit has stated that Title VII unequivocally prohibits discrimination based on "color," even if employees may be the same race. *Etienne*, 778 F.3d

at 475 n.2. The court will not speculate on Valsin's race. Dynes has presented evidence that could support finding that Valsin is outside Dynes's protected group.

Goodyear argues that even if Valsin is outside Dynes's protected group, Valsin is not an appropriate comparator because Dynes and Valsin engaged in different conduct, which accounts for Goodyear's different disciplinary action. Goodyear states that Dynes "initiated the altercation with Valsin and threw the first and only punch." Def.'s Reply, ECF No. 42 at 5.

Goodyear's investigation found that both Dynes and Valsin engaged in the same altercation. Mar. 2023 Report, ECF No. 41-23 at 10. The evidence shows that Dynes initially approached Valsin and both men appear to prepare for a physical altercation—Dynes "aggressively remove[d] his button-down shirt, throwing it to the ground" and "Valsin [removed] his backpack from his shoulders and toss[ed] it to the ground." *Id.* at 2. Both men were "at a close distance and at times face to face" or "chest to chest." *Id.* at 2, 5–6. Both men were "finger pointing and slapping each other's fingers." *Id.* at 5–6. Dynes states that Valsin slapped Dynes first, which prompted Dynes to punch Valsin. *Id.* at 8. All other witnesses state that Dynes threw the first and only punch.[4] *Id.* at 10. Dynes and Valsin's conduct is similar, but even if Valsin and Dynes were similarly situated employees and Dynes was treated less favorably than Valsin, Dynes's claim fails at the pretext stage.

Goodyear consistently states that Dynes was terminated for violating Goodyear's Zero Tolerance Policy. Dynes Termination Letter, ECF No. 41-24. Violation of a company policy is a legitimate reason for termination. *Davis v. Farmers Ins. Exch.*, 372 F. App'x 517, 519 (5th Cir. 2010).

---

[4] Dynes argues, without providing evidence, that both men threw punches. Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., ECF No. 41 at 35. The evidence does not support this statement.

Accordingly, Dynes must present evidence sufficient to establish a genuine issue of material fact about whether Goodyear's asserted reason for termination is pretext for discrimination. *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022); *Hager v. Brinker Tex., Inc.*, 102 F.4th 692, 704 (5th Cir. 2024). The evidence must allow fair-minded factfinders to reach different conclusions about whether Goodyear's proffered reason was, in fact, the reason for Dynes's termination. *Owens*, 33 F.4th at 826. (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003)). A plaintiff can meet his burden to show pretext with circumstantial evidence, including evidence of disparate treatment or evidence tending to show that the employer's explanation is unworthy of credence. *Id.* But the ultimate determination is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination. *Id.* (citing *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000)).

Goodyear argues that Dynes cannot show (1) that Goodyear's stated reason for terminating his employment was false; (2) that Goodyear failed to follow its policy on workplace violence; or (3) that any other employee who engaged in similar conduct was not terminated. Def.'s Reply, ECF No. 42 at 2–6.

Dynes argues that his disparate treatment compared to Valsin is evidence of pretext because both men violated the Zero Tolerance Policy, yet only Dynes was terminated. Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., ECF No. 41 at 35–36. The question at summary judgment is not what really happened in the altercation between Dynes and Valsin or what Dynes now testifies that he did or did not do. The question is whether the information management had about the incident gave rise to a reasonable belief that Dynes violated Goodyear's Zero Tolerance Policy.

Goodyear investigated the altercation. The investigators viewed the surveillance video, interviewed eight Goodyear employees who were potential witnesses, and interviewed Dynes and Valsin. Mar. 2023 Rpt., ECF No. 41-23. The investigators prepared a 10-page Investigation Report. *Id.* As discussed above, the investigation finding is as follows:

> Based on the video evidence and statements from witnesses, it can be confirmed that both Dynes and Valsin actively engaged in an altercation in the workplace. All witnesses, except Dynes himself, indicated that Dynes threw the first and only punch during the altercation. The video evidence further suggests Dynes' intent to confront Valsin, as evidenced by his behavior immediately before the engagement, in which he was observed pacing back and forth outside the change house (close to Valsin) following the conclusion of his shift.

*Id.* at 10. Goodyear's investigation accounted for all the relevant evidence. Dynes clearly violated company policy and was fired for it. On the other hand, Valsin was disciplined, but not fired. The company found that Valsin did not start the fight, so the difference in treatment is directly related to Goodyear's understanding of what took place. Dynes does not argue that Goodyear failed to investigate or disregarded evidence that it found. Goodyear's Zero Tolerance Policy states that not every violation will result in termination. Thus, Goodyear's treatment of Valsin is within its policy. No reasonable juror could infer discrimination from these facts.

Dynes also states that "Mr. Barrett, Caucasian, also violated Goodyear's Zero Tolerance Policy . . . yet never suffered any type of discipline." Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., ECF No. 41 at 35. There is no evidence that Barrett is similarly situated to Dynes—the evidence shows that Barrett was a supervisor and there is no evidence that he engaged in conduct similar to Dynes's.

Because Dynes has not presented evidence that could raise a fact issue about pretext, Goodyear's motion for summary judgment should be granted on Dynes's discrimination claim.

***iii. Retaliation***

"A plaintiff's ultimate burden in the retaliation context is to prove that but-for the employer's improper retaliatory motive, the allegedly retaliatory employment action would not have occurred." *Etienne*, 778 F.3d at 488. A plaintiff can discharge this burden with direct or circumstantial evidence. *Manaway v. Med. Ctr. of Se. Tex.*, 430 F. App'x 317, 324 (5th Cir. 2011).

"The TCHRA does not protect employees from all retaliatory employment action, only from actions that are 'materially adverse.'" *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 788.[5] A retaliatory adverse employment action must be materially adverse such that it "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Temporary actions that are later corrected can be materially adverse. *Metro. Transit Auth. of Harris Cnty. v. Douglas*, 651 S.W.3d 122, 138–39 (Tex. App.—Houston [14th Dist.] 2021, no pet.). Lost overtime and pay can also be materially adverse. *Tex. Health & Human Services Comm'n v. Kadia*, No. 03-23-00100-CV, 2024 WL 3212411, at *16 (Tex. App.—Austin June 28, 2024, no pet.) (citing *Williams*, 2010 WL 797145, at *6).

---

[5] Goodyear and Dynes do not present new arguments about Dynes's adverse employment actions as they relate to retaliation. Both parties refer the court to briefing about adverse employment actions in discrimination. ECF No. 35 at 20; ECF No. 41 at 44. Courts have held that an adverse employment action in the retaliation context requires a different showing than in the discrimination context. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 357 (2024) (distinguishing the standards for harm between discrimination and retaliation); *see also Tex. Dep't of Pub. Safety v. Williams*, No. 03-08-00466-CV, 2010 WL 797145, at *6 (Tex. App.—Austin Feb. 19, 2010, no pet.).

### *a. Direct Evidence*

Direct evidence of retaliation "is evidence which, if believed, proves the fact of intentional retaliation without inference or presumption." *Manaway*, 430 F. App'x at 324. "Thus, the inquiry before a district court is whether 'the direct evidence, truly standing alone, is sufficient to support [a] conclusion that a nexus exists between the protected activity and the adverse employment action.'" *Pete v. City of Houston*, 719 F. App'x 334, 338 (5th Cir. 2018). Direct evidence cannot be broad statements that describe a "host of acts." *Id.* It must include indicia of specificity and causation. *Id.* The court considers whether one of the text messages can be considered direct evidence of retaliation.

As discussed above, Dynes explained that he was denied opportunities for overtime that he believed he was entitled to when he returned to work after Goodyear's investigation. Dynes Dep., ECF No. 41-2 at 121:2–19. Five or six weeks after returning to work, on December 11, 2020, Dynes received the text below.

+18324640730
7:16 AM, Dec 11

Dumb n[redacted] the more you complain, we will continue to fuck up your life. It was no accedent your OT money was taken. We are HR like we said. And as I see n[redacted] the union won't help you either. We are carful picking our spot to fuck you up. N[redacted] nothing will happen to our people we have in place, you n[redacted] life means nothing. Keep checking yo payroll ape

Text re: Overtime, ECF No. 41-13. Obviously, the sender knew Dynes lost out on overtime, but, as was discussed in the discrimination analysis above, a factfinder has to infer that the individuals who sent the message had actual authority to affect Dynes's overtime. Accordingly, the text does not qualify as direct evidence of retaliation.

### b. *Indirect Evidence*

When based on indirect evidence, a claim for retaliation is analyzed under the *McDonnell Douglas* framework. *Wheat v. Florida Par. Juvenile Justice Comm'n,* 811 F.3d 702, 705 (5th Cir. 2016). To establish his prima facie case for retaliation, Dynes must show that: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between the two. *Saketkoo,* 31 F.4th at 998-1000. Goodyear disputes the second and third elements of Dynes's retaliation claim. Def.'s Mot. Summ. J., ECF No. 35 at 19–20.

Dynes engaged in protected activities by reporting discrimination internally to Goodyear, filing an EEOC Charge, and filing this lawsuit. *See Alamo Heights Indep. Sch. Dist. v. Clark,* 544 S.W.3d 755, 786 (Tex. 2018) ("An employee engages in a protected activity by, among other things, filing an internal complaint, opposing a discriminatory practice, or making a charge of discrimination with the EEOC."). Dynes does not clearly state which activities he engaged in that are protected, nor does he clarify which adverse employment actions are the basis of his retaliation claim. Dynes's termination is an adverse employment action. *Alamo Heights Indep. Sch. Dist.,* 544 S.W.3d at 788–89.

To establish the causation element of his retaliation claim at the prima facie stage, Dynes must present either direct or "circumstantial evidence creating a rebuttable presumption of retaliation." *Washburn v. Harvey,* 504 F.3d 505, 510 (5th Cir. 2007). At the prima facie stage, an employee can show a causal connection by circumstantial evidence "when evidence demonstrates that the adverse action was 'based in part on knowledge of the employee's protected activity.'" *Saketkoo,* 31 F.4th at 1001.

Dynes cannot show temporal proximity between his termination and a protected activity because Dynes's termination

occurred in April 2023, about six months after this suit against Goodyear was removed to federal court. *See* ECF No. 1. Courts have indicated that three months between the protected activity and adverse employment action is too long to support a causal connection. *Saketkoo*, 31 F.4th at 1001 n.7 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)).

Dynes also attempts to show a causal connection for his termination with evidence that most of the individuals who were involved in making employment decisions related to Dynes knew of at least some of Dynes's protected activities. Email re: Security, ECF No. 41-10 (email from Clokey to Pontious, Jamison, and Hollis about increased security for Dynes's return to work). Dynes does not provide any evidence tending to show that his termination was based in part on knowledge of Dynes's protected activities.[6] All the evidence shows that his termination was based on his altercation and violation of Goodyear's Zero Tolerance Policy. Because Dynes has not shown a prima facie case of retaliation related to his termination, Goodyear's motion should be granted as to that theory of recovery.

Dynes's delayed pay and overtime can be considered materially adverse actions because both resulted in temporarily lost or decreased pay, which might have dissuaded a reasonable employee from making a complaint. *See Kadia,* 2024 WL 3212411, at *16; *Metro. Transit Auth. of Harris Cnty*, 651 S.W.3d at 138–39. The texts Dynes received state that the harassers "are HR" and the senders knew about Dynes's pay concerns. Invest. Rpt. Mar.

---

[6] Dynes argues that he need only show that the employer knew of his protected activity. But the case that Dynes cites to support this argument only assessed causation after a trial, where the court could "bypass" the *McDonnell Douglas* burden-shifting approach and "proceed to the ultimate question of whether the plaintiff presented enough evidence for a jury to find that [retaliation] occurred." *Equal Employment Opportunity Comm'n v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017). This is not instructive here.

2022, ECF No. 41-17 at 4, 13. One text states that the senders will continue delaying Dynes's pay until he quits. *Id.* at 13. Another text states that it was "no accident" that Dynes's overtime was reduced after his complaints to HR. Text re: Overtime, ECF No. 41-13.

Because the texts that Dynes received fit a pattern—all from anonymous, untraceable numbers, all containing racial epithets, and often relating to Dynes's work at Goodyear—and because one text implies that Dynes's complaint was the reason for his reduced overtime, the texts could be indirect evidence of retaliation as to Dynes's overtime and delayed pay claims at the prima facie stage.

Goodyear argues that its denial of overtime was due to "neutral provisions" in Dynes's Labor Agreement. Def.'s Mot. Summ. J., ECF No. 35 at 17. The Labor Agreement states that an employee who has been absent from work for reasons other than personal injury or illness shall immediately upon the employee's return be charged with the average of the overtime hours charged to the employee's co-workers during the employee's absence. Grievance Letter, ECF No. 41-15. Dynes stated that he should have been "put in the front of the overtime box to get overtime," but instead he was "put in the very back." Dynes Dep., ECF No. 41-2 at 121:2–19. The parties do not explain how Dynes's position in the "overtime box" relates to whether Goodyear followed the Labor Agreement. They apparently disagree about the interpretation of the Labor Agreement. In any event, the court concludes that Goodyear has presented a legitimate, nonretaliatory reason for Dynes's overtime denial—following its understanding of the Labor Agreement. *See Jones*, 212 F. App'x at 275 (applying an objective process for adverse employment action is legitimate and nonretaliatory).

Goodyear provides evidence that Dynes's pay discrepancy was due to an internal mistake in the payroll processing system

that marked Dynes as "inactive" incorrectly after he returned from a leave of absence. Invest. Rpt. Mar. 2022, ECF No. 41-17 at 13. In a similar case, an employer's records mistakenly showed an employee as away without leave and the employee wrongfully did not receive pay for four weeks. *Roman v. Potter*, 604 F.3d 34, 39–40 (1st Cir. 2010). After the employer determined the issue, the employee was fully compensated for the missed paychecks. *Id.* The court held that the employer's offered explanation was a legitimate, nonretaliatory reason for the missed pay. *Id.* The same is true here.

Thus, the burden shifts to Dynes to show pretext related to his overtime and pay claims, which turns on whether the protected conduct "was a 'but for' cause of the adverse employment decision." *Owens*, 33 F.4th at 835 (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)). "[E]ven if a plaintiff's protected conduct is a substantial element in a defendant's [adverse employment action], no liability for unlawful retaliation arises if the employee would have [undergone that action] even in the absence of the protected conduct." *Long*, 88 F.3d at 305 n.4 (citation omitted).

Dynes does not argue that Goodyear's proffered reason for Dynes's overtime issue is pretext for retaliation. The overtime text Dynes received stated that the more Dynes complained, the more the senders would "f*** up" his life, and that it was no accident that Dynes's overtime money was taken. Text re: Overtime, ECF No. 41-13. But there is also evidence that Goodyear followed the Labor Agreement by denying Dynes's overtime request. Grievance Letter, ECF No. 41-15. Because there is evidence that Dynes would have undergone the same denial of overtime even without his protected conduct, he falls short of creating a material fact question about pretext as to his overtime claim.

Dynes also does not argue that Goodyear's proffered reason for Dynes's pay issue is pretext for retaliation, and there is no evidence that retaliation was the but-for cause of Dynes's pay issue. The evidence shows that the pay issue occurred because of a computer processing error. The pay issue occurred in December 2021, four months after he filed his complaint with the EEOC. Invest. Rpt. Mar. 2022, ECF No. 41-17 at 13; EEOC Charge, ECF No. 41-21. A four-month gap between the protected activity and adverse action is insufficient to show pretext, and Dynes has not provided any additional evidence of pretext. Goodyear's motion should be granted for Dynes's overtime and pay retaliation claims.

Even if the remaining bases for Dynes's claims were adverse employment actions in the retaliation context, which the court need not decide, they all fail because Dynes has not shown the minimum causal connection required at the prima facie stage. There is no evidence that the remaining actions taken against Dynes were based in part on knowledge of his protected activities.

The disclosure of Dynes's medical information occurred before Dynes engaged in any protected activities. Thus, Dynes cannot demonstrate causation for this action. *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 494 (5th Cir. 2011) ("Because the protected activity occurred after the adverse employment action at issue, Davis cannot demonstrate causation.").

The evidence shows that Dynes's disciplinary warning was issued by Jamison, who knew about Dynes's protected conduct, but there is nothing in the record showing that the discipline was issued based in part on knowledge of Dynes's complaint. Dynes Dep., ECF No. 41-2 at 141:4–20. Dynes also does not provide any evidence of the temporal proximity between the discipline and his complaint. Without more, the evidence is insufficient to show causation for Dynes's disciplinary action.

Leske initially disclosed Dynes's COVID-19 diagnosis, but there is no evidence that Leske removed Dynes's lock from his locker based in part on knowledge of Dynes's complaints. The evidence shows that Leske had the lock removed after Dynes had transferred to a different department, about 10 months after Dynes's initial complaints and at least six months after Dynes reported any concerns to Goodyear. *See* Union Memo re: Locker, ECF No. 41-16. Without more, the evidence is insufficient to show causation for Dynes's locker claim.[7]

Accordingly, Goodyear's motion should be granted as to Dynes's retaliation claim.

### *4. Conclusion*

The summary judgment record shows genuine issues of material fact as to Dynes's hostile work environment claim, which should proceed to trial. As to all of Dynes's other claims, there are no genuine issues of material fact and Goodyear is entitled to judgment as a matter of law. The court recommends that Goodyear's summary judgment motion, ECF No. 35, be **GRANTED in part and DENIED in part**. Both motions to strike, ECF Nos. 40 and 45 are **DENIED**.

---

[7] Goodyear also addresses Dynes's bidding-related claim in its motion. Def.'s Mot. Summ. J., ECF No. 35 at 17. Dynes does not address any bidding concerns in his response and does not provide any evidence related to an inability to bid. To the extent that Dynes based his claim upon inability to bid on a new position, Dynes has failed to meet his burden.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on February 17, 2025.

Peter Bray
United States Magistrate Judge